**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

TERROL M. PRATHER,
   Appellant,

  v.

DEPARTMENT OF THE ARMY,
   Agency.

DOCKET NUMBER
DC-0752-14-0327-B-1

DATE: November 22, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Deano C. Ware, Redford, Michigan, for the appellant.

Keith Bracey, Esquire and Judith A. Fishel, APO, AE, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## FINAL ORDER

¶1  The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to (1) VACATE the portion of the initial decision addressing the issue of retaliation for equal employment opportunity (EEO) activity; (2) construe the first and second charges as a single charge of failure to maintain a condition of employment, and sustain that charge; and (3) find that the agency failed to prove its third charge, we AFFIRM the initial decision.

## BACKGROUND

¶2 Under Department of Defense (DOD) regulations, civilian employment in the competitive service in foreign areas generally is limited to a period of 5 continuous years. DOD Instruction (DODI) No. 1400-25, Volume (Vol.) 1230, ¶ 4.h.(1)[2]; *see* 10 U.S.C. § 1586 (generally authorizing the establishment of rotation programs to facilitate the interchange of civilian DOD employees between posts of duty in and outside the United States). An employee who is covered by the 5-year limitation, and who does not have a statutory right to return to a position in the United States,[3] must, as a condition of employment, agree to

---

[2] *Prather v. Department of the Army*, MSPB Docket No. DC-0752-14-0327-I-1, Initial Appeal File (IAF), Tab 5 at 23-35.

[3] Generally, competitive service career and career-conditional employees who are employed in the United States or another nonforeign area and who accept an assignment in either a foreign area or in a nonforeign area different from the one where they are

register in the agency's Priority Placement Program (PPP) before the end of the 5-year period or before the end of an approved extension. DODI No. 1400-25, Vol. 1230, Enclosure (Encl.) 2, ¶ 5.a.(2). The employee also must agree that failure or refusal to register in the PPP is a basis for separation. *Id.*, Encl. 2, ¶ 5.a.(3)(c).

¶3        The DOD PPP Handbook,[4] which sets out standard operating procedures for the PPP, provides that PPP registration will be denied when the registering activity—in this case, the agency's Civilian Personnel Advisory Center (CPAC)— has knowledge of performance or conduct that directly and negatively affects the employee's qualifications, eligibility, or suitability for placement. DOD PPP Handbook, chapter 3, ¶ C.16. In the case of "substantiated conduct or performance problems," regardless of whether formal disciplinary action is taken, eligibility will be withheld for a period of time to ensure that the necessary corrective measures have had their intended effect. *Id.*, chapter 3, ¶ C.16.(a). Local agency policy further specifies that when CPAC has knowledge of a conduct or performance problem, PPP registration must be withheld for a period of at least 90 days. *Prather v. Department of the Army*, MSPB Docket No. DC-0752-14-0327-I-1, Initial Appeal File (IAF), Tab 5 at 107.

¶4        On September 29, 2008, the appellant received a career appointment to the Supervisory Food Service Operations Specialist position in Wiesbaden, Germany. IAF, Tab 5 at 22. Because the appellant was recruited in Germany, and therefore did not have statutory return rights, the agency required him to sign a Department of the Army Form 5370-R, Rotation Agreement – Employees Recruited Locally in Foreign Areas. *Id.* at 36-37. The Rotation Agreement provided that his overseas assignment was limited to an initial tour and any management-initiated extension

---

employed currently shall be granted statutory return rights. 10 U.S.C. § 1586(b); DODI No. 1400-25, Vol. 1230, ¶ 4.i.

[4] IAF, Tab 5 at 50-106. The PPP Handbook has since been updated, but we will refer here to the version that was in effect at the time of the events at issue in this appeal.

thereof, and that he did not have a right to extensions beyond the initial tour. *Id.* at 36. The Rotation Agreement further provided that, because he did not have return rights, he would apply for assignment to the United States under the PPP before completing his initial tour and any extensions thereof. *Id.* The appellant acknowledged that failure to comply with the "conditions of employment" described in the agreement could result in a proposal to remove him from Federal service. *Id.*

¶5     The appellant's initial tour was limited to 24 months, ending September 28, 2010, but was subsequently extended to September 20, 2012, and again to June 28, 2013. *Id.* at 37. The agency denied his request for an additional extension, and he agreed to register for the PPP. *Prather v. Department of the Army*, MSPB Docket No. DC-0752-14-0327-B-1, Remand File (RF), Tab 26 at 10. The appellant's PPP registration was initially delayed due to his receipt of a November 28, 2012 letter of reprimand, which rendered him ineligible for 90 days, but he successfully registered for the PPP on March 15, 2013, before the end of his tour. IAF, Tab 5 at 48-49, 109-11. It is undisputed that the agency had discretion to allow him to continue in his position beyond the end of his tour, provided he remained registered in the PPP. IAF, Tab 34, Hearing Compact Disc (HCD), Track 1 (testimony of Human Resource Specialist).

¶6     On October 9, 2013, the appellant had a confrontation with his second-line supervisor concerning the supervisor's instruction to keep his office door open. The following day, two coworkers who witnessed the event provided written statements relating that the appellant created a disturbance by yelling at the supervisor, and then yelling at one of the coworkers. IAF, Tab 5 at 112-14. On October 11, 2013, a Human Resource Specialist in the Wiesbaden CPAC informed the appellant that he was being removed from the PPP "because of misconduct determined by management." IAF, Tab 9 at 10. Subsequently, on October 22, 2013, the same supervisor proposed to remove the appellant based on the following charges:  (1) the expiration of his tour of duty; (2) his ineligibility

to remain in the PPP; and (3) his failure to abide by the terms of the Rotation Agreement. *Id.* at 116-18. The proposing official explained that the appellant's removal from the PPP "was required because of your disrespectful conduct and for causing a disturbance" on October 9, 2013. *Id.* at 116. The proposing official proceeded to relate his own version of the events of that day, which corresponded with the statements provided by the two coworkers. *Id.* at 117. The appellant submitted a written response, in which he disputed the statements by the proposing official and the two coworkers, alleged that the proposing official had initiated the argument as a pretext for removing him, and contended that he was unlawfully removed from the PPP without prior notice. *Id.* at 119-36. After considering the appellant's response, the deciding official sustained the proposed action, and the appellant was removed effective December 20, 2013. *Id.* at 137-43.

¶7    The appellant filed a timely Board appeal, which the administrative judge initially dismissed for lack of jurisdiction. IAF, Tab 10, Initial Decision. The full Board remanded the appeal for a jurisdictional hearing, and the administrative judge determined on remand that the Board had jurisdiction over the appellant's removal. RF, Tabs 1, 15. Following a hearing, the administrative judge issued an initial decision sustaining the action. RF, Tab 32, Remand Initial Decision (RID). The administrative judge sustained all three charges, found that the appellant had failed to establish an affirmative defense of retaliation for EEO activity, and further found that the removal penalty was reasonable. *Id.* The appellant filed the instant petition for review, to which the agency has responded. Petition for Review (PFR) File, Tabs 2, 4. On November 4, 2016, the Board issued an order directing the agency to submit additional information concerning the PPP. PFR File, Tab 5.[5] The agency filed a timely response to the Board's order, and the appellant also responded. PFR File, Tabs 8-9.

---

[5] Specifically, the Board asked the agency to address the following topics:

## ANALYSIS

<u>The appellant's removal from the PPP is not appealable to the Board under 5 C.F.R. § 330.214.</u>

¶8    On review, the appellant first argues that his removal from the PPP is appealable to the Board under 5 C.F.R. § 330.214,[6] which provides that an individual who believes that his reemployment rights under subpart B of 5 C.F.R. part 330 have been violated may appeal to the Board. PFR File, Tab 2 at 7-10. Subpart B of 5 C.F.R. part 330 governs the operation of the Reemployment Priority List (RPL), which is a required component of an agency's placement programs to assist current and former competitive-service employees who will be or were separated by reduction in force (RIF) or who have recovered from a compensable work-related injury after more than 1 year. 5 C.F.R. § 330.201(a). Subpart B also provides that an agency may operate an alternative placement program, approved by the Office of Personnel Management (OPM), as an exception to the RPL regulations, but this provision is limited in scope to reemployment priority because of RIF separation. 5 C.F.R. § 330.201(d). Here, regardless of whether the PPP was approved by OPM, the appellant has not

---

1.  What is the purpose and historical origin of the [PPP]?

2.  Under what legal authority, statutory or otherwise, was the appellant required to maintain PPP registration as a condition of continued employment?

3.  Does the agency's implementation of the PPP, as pertinent to this case, differ from or expand on [DOD] PPP policy? If so, how?

4.  The DOD PPP Handbook provides that, in the case of "substantiated" conduct or performance problems, eligibility for the PPP will be withheld for a period of time to ensure that the necessary corrective measures have had their intended effect. What does the term "substantiated" mean in this context, and how does the agency measure what is/is not "substantiated"?

PFR File, Tab 5.

[6] The appellant cites 5 C.F.R. § 330.209, where the Board appeal rights provision was located prior to March 3, 2011. PFR File, Tab 2 at 8-9; *see* 5 C.F.R. § 330.209 (2010); 75 Fed. Reg. 67589-01 (Nov. 3, 2010) (revising and recodifying portions of 5 C.F.R. part 330); *see also Roberto v. Department of the Navy*, 440 F.3d 1341, 1350-51 (Fed. Cir. 2006) (interpreting the predecessor regulation at 5 C.F.R. § 330.209).

alleged that the agency violated any reemployment rights arising from RIF separation or recovery from a compensable injury. Thus, we find that his challenge to the agency's decision to remove him from the PPP is not within the Board's jurisdiction under 5 C.F.R. § 330.214.

The administrative judge erred in adjudicating an affirmative defense of retaliation for EEO activity.

¶9 The appellant further contends on review that the administrative judge did not apply an appropriate standard of review to his "disparate treatment" claim. PFR File, Tab 2 at 10-11. He asserts that his intent was not to raise an affirmative defense to the removal action, which he would have the burden of proving, but rather to raise a disparate penalties claim in opposition to the agency's penalty determination, which is an issue on which the agency bears the burden of proof. *Id.*

¶10 The record supports the appellant's assertion. In the summary of the prehearing conference for the merits hearing, the administrative judge indicated that the appellant had raised an affirmative defense of retaliation for EEO activity. RF, Tab 3 at 3. The appellant did not file a written objection to the summary, but at the hearing, his attorney explicitly stated that he was not raising an affirmative defense to the removal action and that the appeal was not a mixed case. HCD, Track 2 at 47:00 (statement of the appellant's attorney). Nonetheless, the administrative judge made a finding that the appellant's removal was not the result of retaliation for EEO activity, and provided notice of mixed-case appeal rights. RID at 10-12, 16-17.

¶11 We agree with the appellant that the administrative judge should not have adjudicated an affirmative defense the appellant indicated he did not wish to pursue. Accordingly, we vacate the portion of the initial decision addressing the issue of retaliation for EEO activity. We address the disparate penalties claim below in our discussion of the agency's penalty determination.

<u>The agency has met its burden of proof on charges (1) and (2), which we construe as a single charge of failure to maintain a condition of employment.</u>

¶12    We find that charge (1), the expiration of the appellant's tour of duty, and charge (2), his ineligibility to remain in the PPP, together amount to a single charge of failure to maintain a condition of employment.[7]  When, as in this case, a charge of failure to maintain a condition of employment is based on the employing agency's withdrawing or revoking its certification or other approval of the employee's fitness or other qualifications to hold his position, the Board's authority generally extends to review of the merits of that withdrawal or revocation.  *Adams v. Department of the Army*, [105 M.S.P.R. 50](#), ¶ 10 (2007), *aff'd*, 273 F. App'x 947 (Fed. Cir. 2008).  In conducting that review, the Board determines whether, under the circumstances, the agency acted reasonably in denying the required certification or approval.  *See id.*, ¶ 19. The Board has recognized a narrow exception in cases in which the adverse action is based on the withholding of a national security credential, such as a security clearance or eligibility to occupy a sensitive position.  *Id.*, ¶ 11; *see Department of the Navy v. Egan*, [484 U.S. 518](#), 530-31 (1988); *Kaplan v. Conyers*, [733 F.3d 1148](#), 1166 (Fed. Cir. 2013) (en banc).  This is not such a case, however.  Accordingly, in order to determine whether the agency proved its charge, we will consider whether, under the circumstances, the agency acted reasonably in removing the appellant from the PPP.  *Adams*, [105 M.S.P.R. 50](#), ¶ 19.

¶13    As discussed above, the agency's policy provides that "[i]n the case of substantiated conduct or performance problems," an employee's eligibility for the PPP will be withheld for a period of time to ensure that the necessary corrective measures have had their intended effect.  DOD PPP Handbook, chapter 3, ¶ C.16(a).  The PPP Handbook further explains that, for purposes of determining

---

[7] As previously discussed, the end of the appellant's tour of duty would not have precluded his continued employment had he remained in the PPP.  Similarly, his enrollment in the PPP did not become a requirement for continued employment until his tour of duty expired.

PPP eligibility in accordance with that provision, "conduct problems" include the following: (1) attendance deficiencies such as recurring tardiness or unexcused absence, or abuse of sick leave; (2) conduct on or off the job that could render the employee unsuitable for Federal employment under 5 C.F.R. § 731.202; and (3) any other conduct that adversely affects the productivity and efficiency of the organization and could potentially require disciplinary action. DOD PPP Handbook, chapter 3, ¶ C.16(c).

¶14    We find that, under the circumstances, the agency reasonably determined that the appellant had substantiated conduct problems that required his removal from the PPP. *See* IAF, Tab 9 at 10 (explaining that the appellant was being removed from the PPP "because of conduct determined by management"). In addition to the proposing official's personal knowledge, the evidence available to the agency included two written statements, one of them sworn, by disinterested, firsthand witnesses to the October 9, 2013 incident. IAF, Tab 5 at 112-14. Both witnesses related that the appellant created a disturbance by arguing with and yelling at the proposing official, and then yelling at one of the coworkers. *Id.* While the appellant attempted to identify discrepancies in their statements in his response to the proposed removal, we find the two statements are consistent with each other, as well as the recollection of the proposing official. *Id.* at 112-14, 117. Given the available evidence, it was reasonable for the agency to conclude that the statements by the coworkers were accurate in their relevant details, and that the appellant did in fact create a workplace disturbance. *Cf. Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 87 (1981) (stating that the Board generally assesses the probative value of hearsay by considering various factors that include the availability of persons with firsthand knowledge to testify at the hearing, whether the statements of the out-of-court declarants were sworn, whether the declarants were disinterested witnesses to the events and whether their statements were routinely made, the consistency of the out-of-court statements with other statements and evidence, whether there is corroboration or contradiction in the

record, and the credibility of the out-of-court declarant). Moreover, even accepting as true the appellant's contention that the proposing official initiated the argument, the appellant's admitted participation was unnecessarily disruptive, adversely affected the productivity and efficiency of the office, and could have potentially required at least a minor disciplinary action. We conclude that, under the circumstances present here, the agency reasonably determined that it had knowledge of substantiated conduct problems, thus rendering the appellant ineligible for the PPP, at a time when registration in the PPP was a condition of his continued employment. *See* DOD PPP Handbook, chapter 3, ¶ C.16(c). Accordingly, we sustain the charge of failure to maintain a condition of employment.

Charge (3) is not sustained.

¶15 We construe charge (3), concerning the appellant's alleged "[f]ailure to abide by [the] terms" of the Rotation Agreement, as an alleged breach of contract. Notwithstanding its title, however, the Rotation Agreement is not contractual in nature, but rather serves a "notice function, to warn prospective overseas employees of the restrictions on their employment." *Soper v. United States*, 677 F.2d 869, 872 (Ct. Cl. 1982). Because the Rotation Agreement was not in fact a contract, we do not sustain the charge.

The removal penalty is sustained.

¶16 The appellant also argues on review that the administrative judge failed to analyze the agency's penalty determination under the applicable *Douglas* factors. PFR File, Tab 2 at 12-16; *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (listing 12 factors generally recognized as relevant for consideration in determining the appropriateness of a penalty). We find, however, that the penalty determination in this case is not subject to a typical *Douglas* factors analysis. As our reviewing court has explained, the *Douglas* mitigation analysis "reflects the general principle that penalties should be

proportional to misconduct." *Ryan v. Department of Homeland Security*, 793 F.3d 1368, 1372 (Fed. Cir. 2015). Consistent with that principle, the majority of the *Douglas* factors concern misconduct charges and have no application to adverse actions taken for other reasons, such as failure to maintain a condition of employment. *Douglas*, 5 M.S.P.R. at 305-06; *see Munoz v. Department of Homeland Security*, 121 M.S.P.R. 483, ¶ 15 (2014) (holding that a "traditional" *Douglas* factors analysis does not apply to an adverse action based on inability to meet a condition of employment, because such an action is not a "sanction or penalty for misconduct").

¶17     In determining the appropriate penalty for a charge of failure to maintain a condition of employment, the Board instead considers a more limited set of factors, which generally include (1) the nature of the offense, (2) its effect on the appellant's performance of the job, and (3) the availability and effect of alternative sanctions.[8] *Penland v. Department of the Interior*, 115 M.S.P.R. 474, ¶ 8 (2010). The first two considerations generally weigh in favor of removal, because an employee who does not meet the conditions of employment cannot perform his job. *Id.* As to the availability of alternative sanctions, the appellant argues that, instead of removing him, the agency could have granted an additional tour extension, thus permitting him time to correct any conduct issues and regain eligibility for the PPP. PFR File, Tab 2 at 16-17. The deciding official testified that he did consider the possibility of such an extension. HCD, Track 2 (testimony of deciding official). However, as the appellant acknowledged when he signed the Rotation Agreement, extensions are not automatic and not a matter of right. IAF, Tab 5 at 36. In addition, the proposing official provided

---

[8] When an appellant is removed for failure to maintain a security clearance or eligibility to occupy a sensitive position, or for failure to complete an "up-or-out" training program, and there is no law or regulation granting the employee a substantive right to reassignment, the Board will not inquire whether reassignment is a possible alternative sanction. *Munoz*, 121 M.S.P.R. 483, ¶¶ 15-16; *Radcliffe v. Department of Transportation*, 57 M.S.P.R. 237, 242 (1993). This is not such a case, however.

unrebutted testimony that, due to a change in mission, the appellant's position no longer needed to be filled. HCD, Track 2 (testimony of proposing official). Under these circumstances, we find that it was not unreasonable for the agency to remove the appellant instead of extending his tour.

¶18 Finally, we find no merit to the appellant's claim of disparate penalties. When an employee raises a disparate penalties claim, the proper inquiry is whether the agency knowingly treated employees who engaged in the same or similar offense differently "in a way not justified by the facts, and intentionally for reasons other than the efficiency of the service." *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 14 (quoting *Facer v. Department of the Air Force*, 836 F.2d 535, 539 (Fed. Cir. 1988)). Here, the appellant has not identified any employees whom he alleges were similarly situated. Consequently, his disparate penalties claim does not undercut the agency's showing that the removal penalty was reasonable.

¶19 Accordingly, we affirm the initial decision.

## NOTICE OF APPEAL RIGHTS[9]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. \_\_\_\_ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10] The court of appeals must <u>receive</u> your

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                              /s/ for

                                    Jennifer Everling
                                    Acting Clerk of the Board
Washington, D.C.